## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLANA VOSS, | : | Civil No. 1:20-CV-00754 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MANITOWOC CRANES, LLC, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is an employment discrimination case brought by Plaintiff, Marlana Voss ("Voss"), a former employee of Defendant, Manitowoc Cranes, LLC ("Manitowoc"). This action is brought pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and the Pennsylvania Human Relations Act ("PHRA"). Before the court is Manitowoc's motion to dismiss all claims in Voss's complaint. (Doc. 6.) For the reasons that follow, the motion will be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Voss first filed suit in this case on May 8, 2020. (Doc. 1.) According to the allegations in the complaint, Voss began working at Manitowoc on April 25, 2005. (*Id.* ¶ 12.) In July 2015, Voss started working as the first-shift materials supervisor in Manitowoc's R&D building. (*Id.* ¶ 14.) Voss shared an office with a fellow employee named Dana Cunningham ("Cunningham"), a male engineer. (*Id.*) In

the following weeks, Cunningham directed lewd and inappropriate comments toward Voss and made unwelcomed sexual advances. (*Id.* ¶ 15.) On March 14, 2016, Voss was laid off due to a company-wide work force reduction. (*Id.* ¶ 16.)

On approximately April 6, 2016, Cunningham visited Voss's home because he allegedly had information about her employment at Manitowoc and assured her that he would do what he could to get her rehired. (*Id.* ¶ 17.) While Cunningham was in Voss's home, Voss went to her basement to get Cunningham something to drink and Cunningham followed Voss and sexually assaulted her. (*Id.*) After this incident, Cunningham, using his Manitowoc-issued phone, sent Voss numerous sexually explicit text messages and nude photographs over the following weeks. (*Id.* ¶ 18.)

In May 2017, Voss was rehired by Manitowoc as a buyer/supply chain analyst. (*Id.* ¶ 19.) In this new position, Voss worked in the main administrative office and not the R&D building where Cunningham worked. (*Id.*) In July 2017, Voss received an anonymous letter at her home, the contents of which accused Voss of having a sexual relationship with a coworker at Manitowoc. (*Id.* ¶ 20.)

During August 2017, Voss was asked to return to her materials supervisor position in the R&D building by managers Jon Eberhardt ("Eberhardt") and Rick Shank ("Shank"). (*Id.* ¶ 21.) Voss explained that a coworker had sexually harassed her while she worked in the R&D building and declined the request. (*Id.*)

2

Shank asked if the coworker she was referring to was Cunningham and Voss confirmed that it was.  (*Id.*)  Shank acknowledged that he was aware that Cunningham had harassed and assaulted another employee.  (*Id.*)

The day after meeting with Eberhardt and Shank, Voss met with Brian Smith ("Smith"), the human resources director at Manitowoc.  (*Id.* ¶ 22.)  After Voss told Smith about her dealings with Cunningham, Smith said that no action could be taken against Cunningham because all of the alleged conduct occurred off the premises of Manitowoc.  (*Id.*)  In addition, Voss informed Smith that another Manitowoc employee was sexually harassed by Cunningham and made complaints about his behavior.  Smith stated he was unaware of any previous sexual harassment complaints involving Cunningham but would check his file.  (*Id.*)

In September 2017, Tom McMurdy ("McMurdy"), the vice president of purchasing at Manitowoc, started sending emails criticizing Voss's work performance.  Prior to these emails Voss had a positive working relationship with McMurdy.  (*Id.* ¶ 23.)  In October 2017, Voss received another anonymous letter at her house.  (*Id.* ¶ 24.)  The author of the anonymous letter asserted that he/she was in a sexual relationship with Voss.  (*Id.*)  Also in October 2017, Voss learned while speaking with a former Manitowoc employee that Cunningham had sexually harassed and assaulted at least two other female employees.  (*Id.* ¶ 25.)

Cunningham was promoted to the position of building manager in November 2017. (*Id.* ¶ 26.) Following his promotion, Cunningham began telling Voss he would have her transferred to the material supervisor position in the R&D building. (*Id.*) Cunningham was the direct supervisor of the material supervisor position. (*Id.*)

On November 14, 2017, Voss was in the R&D building conducting inventory when Cunningham asked her to come to his office. (*Id.* ¶ 27.) Once in the office, Cunningham made sexually suggestive comments to Voss, asked about her marriage, and stated he wanted to run away with her. (*Id.*) Cunningham repeatedly asked Voss to close his office door. Voss said "no" several times. Cunningham then proceeded to shut the door, positioning himself between Voss and the door. (*Id.* ¶ 28.) Voss stood up to leave his office when Cunningham made physical contact with Voss using his hand to hit her buttocks and seize her shoulders with both hands. (*Id.*) Cunningham said that he wanted to "explore [her] body" and "play with [her] all over." (*Id.*) Voss responded "you don't need to be doing all that crazy stuff." (*Id.*) Cunningham then followed with an apology for his actions and agreed to comply with the "ground rules" after which Voss left the office. (*Id.*)

In January 2018, Voss heard a rumor that she had been placed on a performance improvement plan ("PIP"). (*Id.* ¶ 29.) Voss met with Smith, the

Human Resources director, on January 24, 2018. (*Id.*) Smith informed Voss that Manitowoc's Human Resources department had to approve any PIP or poor review. Smith stated he was unaware of any impending poor performance review or forthcoming decision to place Voss on PIP. (*Id.*)

Several days after this meeting with Smith, Voss met with Smith again as well as her direct supervisor, Mike Ward ("Ward"). At the meeting Ward presented Voss her first substandard performance review since the commencement of her employment. (*Id.* ¶ 30.) The performance review included unwarranted criticisms of Voss's attendance and cellphone use. (*Id.*) Following Ward's negative evaluation Voss began copying him on all her work-related emails. After viewing her work-related emails, Ward told Voss that he could defend her work performance when questioned by McMurdy. (*Id.* ¶ 31.)

Voss received another anonymous letter at her home on March 26, 2018. In the letter, the author expressed a plan to move into Voss's house after she divorced her husband. (*Id.* ¶ 32.) Voss's neighbors saw a man, fitting Cunningham's physical description, stop at Voss's mailbox the previous day. (*Id.*)

After receiving this letter, Voss, accompanied by her husband, met with Smith to discuss Cunningham's actions. (*Id.* ¶ 33.) Voss presented Smith copies of the anonymous letters she had received. (*Id.*) Upon looking at the letters, Smith told Voss there was no proof that Cunningham was the author of the letters. (*Id.*)

5

In addition to showing Smith the letters, Voss described to Smith the incident that occurred in Cunningham's office on November 14, 2017.  Smith told Voss she was not firm enough in rejecting Cunningham's advances.  (*Id.*)  Voss's husband also expressed his concern, explaining that Voss had been experiencing symptoms of anxiety and depression due to her work situation at Manitowoc.  (*Id.*)  Finally, Voss stated her belief that she had received the negative performance evaluation to harass her in retaliation for having made a complaint about Cunningham.  (*Id.*)

On April 3, 2018, Voss and her husband met with Smith and Sharon Bair ("Bair"), a Human Resources representative.  (*Id.* ¶ 34.)  At the meeting, Smith criticized Voss for not coming forward earlier about the November 14, 2017 incident.  Smith stated the timing of her allegations was not "fair" to Cunningham.  (*Id.*)  Around this time, Voss began suffering from significant shoulder and neck pain.  (*Id.* ¶ 35.)  She additionally received treatment for work-related depression and anxiety.  Voss missed work on April 4 and April 5, 2018 because of her medical condition.  (*Id.*)

On April 5, 2018, Smith called Voss to inform her that Cunningham had been placed on administrative leave pending further investigation.  (*Id.* ¶ 36.)  On April 9, 2018, Smith told Voss that Manitowoc had decided to terminate Cunningham.  (*Id.* ¶ 37.)  Smith once again told Voss he believed she was a willing participant in Cunningham's inappropriate actions because Voss was not firm

enough in rejecting his behavior. (*Id.*) Smith proceeded to tell Voss she would be disciplined which could mean termination for any other misconduct. (*Id.*)

Voss missed work on April 11, 2018, April 24, 2018, and April 25, 2018 because of a combination of symptoms such as "sleep attacks" that caused Voss to suddenly fall asleep, which she believes were brought on by her work environment. (*Id.* ¶ 38.) Voss requested that Ward provide her with an adjustable desk to help remedy her pain in her neck, shoulder, and limbs, but Ward declined this request. (*Id.*)

On May 3, 2018 Voss applied for short-term disability ("STD") and Family and Medical Leave Act ("FMLA") leave. (*Id.* ¶ 39.) Voss's application was approved by a third-party company that manages Manitowoc's leave. (*Id.*) On May 4, 2018, Voss advised Ward by email that her leave had started and that she would work from home during her leave. (*Id.* ¶ 40.) Ward responded via email and confirmed her status. (*Id.*)

On May 7, 2018 at 1:30 a.m., Voss emailed Ward to inform him that although she would be working from home on that date, she had plans to attend a funeral in the morning followed by a doctor's appointment. (*Id.* ¶ 41.) Voss also informed Ward that she would not be monitoring her emails until after her doctor's appointment. (*Id.*)

After Voss's doctor appointment she received an email from Smith stating that Ward had reported her absent without leave from May 4 to May 7.  (*Id.* ¶ 42.) Ward also relayed to Smith that Voss had been unresponsive to emails.  (*Id.*)  Voss then forwarded Smith her email correspondence with Ward.  (*Id.*)  On May 11, 2018, Smith informed Voss that she would not be permitted to work from home during her leave because of the severity of her symptoms but would be paid during her absence.  (*Id.* ¶ 43.)

Approximately 3 months later, on August 8, 2018, Smith emailed Voss requesting that she provide detailed medical documentation as to her current condition, prognosis, and plan of treatment.  (*Id.* ¶ 44.)  Smith stated the information was necessary in order for Manitowoc to determine whether Voss had a disability and if reasonable accommodation was necessary and available to enable Voss to perform her job duties.  (*Id.* ¶ 44.)  Smith informed Voss that if she did not provide this information she would be terminated.  (*Id.*)

Voss responded to Smith's email on August 13, 2018 with the information requested.  (*Id.* ¶ 45.)  Voss provided an in-depth description of her diagnosis and symptoms including medical records from her primary care physician.  (*Id.*)  She explained that her symptoms developed as a result of the sexual harassment by Cunningham and Manitowoc's handling of the matter including its retaliatory behavior.  (*Id.*)  Voss never received a response from Manitowoc.  (*Id.*)

8

On February 4, 2019 Voss was informed she was being terminated because Manitowoc had eliminated her buyer position.  (*Id.* ¶ 46.)  In the months prior to Voss's termination, however, Manitowoc had hired two individuals for buyer positions.  (*Id.*)

Voss's complaint raises seven claims.  In Count I, she alleges disparate treatment in violation of Title VII of the Civil Rights Act.  (*Id.* at 11–12.)[1]  In Count II, she alleges harassment in violation of Title VII.  (*Id.*)  In Count III, she alleges retaliation in violation of Title VII.  (*Id.* at 12–13.)  In Count IV, she alleges discrimination and wrongful discharge on the basis of disability in violation of the ADA.  (*Id.* at 13.)  In Count V, she alleges that Defendant interfered with her ability to take FMLA leave in violation of the FMLA.  (*Id.* at 14–15.)  In Count VI, she alleges retaliation in violation of the PHRA.  (*Id.* at 15–16.)  In Count VII, she alleges retaliation and discrimination under the PHRA.  (*Id.* at 16–17.)  Voss seeks prospective injunctive relief in the form of reinstatement as well as various forms of monetary relief.  (*Id.* at 17–18.)

### JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1367, which

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

gives district courts supplemental jurisdiction over state law claims that are so closely related to federal claims as to be part of the same case or controversy.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**DISCUSSION**

### A. Voss's ADA Claim Is Dismissed for Failure to Exhaust Administrative Remedies

The court will first address Manitowoc's argument that Voss failed to exhaust administrative remedies with regard to her ADA claim.  (Doc. 7, pp. 12–14.)  Before filing suit in federal court, a plaintiff alleging employment discrimination must exhaust administrative remedies.  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).  The exhaustion requirements under the ADA mirror those under Title VII.  *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999).  Thus, a plaintiff must bring a timely charge of discrimination before the Equal Employment Opportunity Commission ("EEOC") and obtain notice of her right to sue in order to exhaust her administrative remedies.  *Mandel*, 706 F.3d at 163.

Once a plaintiff has filed a claim before the EEOC and has obtained notice of her right to sue, the scope of the subsequent federal litigation is defined by the scope of proceedings before the EEOC.  *Id.*  Thus, any claim that the plaintiff brings in federal court must be "within the scope of the prior EEOC complaint, or the investigation arising therefrom."  *Id.* (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)).

In this case, Defendants argue that Voss failed to exhaust administrative remedies for her ADA claim because she did not allege discrimination on the basis

of disability in her EEOC charge.[2]  (Doc. 7, pp. 15–17.)  Defendants note that Voss did not check a box on her EEOC charge indicating that she was discriminated against on the basis of a disability and argue that she did not otherwise assert disability discrimination in the EEOC charge.  (*Id.*)

Voss concedes that she did not check the appropriate box for disability discrimination on her EEOC charge, but argues that the failure to check the appropriate box "is not necessarily indicative of a failure to exhaust the mandatory administrative remedies."  (Doc. 15-1, pp. 20–21.)  Voss argues that a claim should be considered administratively exhausted where there is a close nexus between the allegations raised in the EEOC charge and the allegations subsequently raised in federal court.  (*Id.* at 21.)  She argues that such a close nexus is present here because her EEOC charge clearly discussed the conditions that give rise to her ADA claim before this court.  (*Id.* at 21–22.)

A district court considering whether a plaintiff has administratively exhausted an employment discrimination claim must liberally construe the

---

[2] A district court considering a motion to dismiss generally may only consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider, however, "a document integral to or explicitly relied upon in the complaint." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Accordingly, the court may consider Voss's EEOC charge despite the fact that it was not attached to her complaint because it is integral to the complaint. *See, e.g.*, *Thompson v. Keystone Human Servs. Corp.*, No. 1:09-CV-02558, 2012 WL 398619, at *5 n.5 (M.D. Pa. Feb. 7, 2012) (concluding that court could consider EEOC charge in resolving motion to dismiss in employment discrimination case).

plaintiff's EEOC charge, and "the failure to check a particular box on an EEOC charge is not necessarily indicative of a failure to exhaust the mandatory administrative remedies." *Lowenstein v. Catholic High East*, 820 F. Supp. 2d 639, 644 (E.D. Pa. 2011) (internal alterations omitted) (quoting *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999)). Thus, a plaintiff's failure to check the appropriate box "does not preclude a plaintiff from bringing a claim for that type of discrimination as long as the plaintiff has alleged sufficient facts to put the EEOC on notice of the claim." *Seiple v. Two Farms, LLC*, No. 20-CV-05650, 2021 WL 601171, at *4 (E.D. Pa. Feb. 16, 2021). Where, however, an EEOC charge neither checks the appropriate box for a claim nor alleges sufficient facts to put the EEOC on notice of the claim, the district court must dismiss the claim with prejudice for failure to exhaust. *Savage v. Temple Univ. – of Commw. Sys. of Higher Educ.*, No. 19-CV-06026, 2020 WL 3469039, at *3 (E.D. Pa. June 25, 2020) (citing *Titus-Williams v. Schirg*, No. 19-CV-04743, 2020 WL 424950, at *1 (E.D. Pa. Jan. 24, 2020)).

The United States District Court for the Eastern District of Pennsylvania considered a case with facts similar to the present case in *McIntosh v. White Horse Village, Inc.*, 176 F. Supp. 3d 480, 482–83 (E.D. Pa. 2016). In *McIntosh,* the plaintiff failed to check the "disability" box and made no mention of disability discrimination in the attached document to the EEOC charge. (*Id.*) In explaining

that the claim was not within the scope of the plaintiff's EEOC charge, the *McIntosh* court stated "[p]laintiff does not describe the reason for her medical leave of absence, nor does she describe any disability she suffers or is perceived as having, and she does not at any point indicate she is asserting a violation of rights under the ADA." (*Id.* at 482.)

This court finds the *McIntosh* court's reasoning instructive. Like the plaintiff in *McIntosh*, Voss failed to check the box indicating that she was bringing a claim for disability discrimination in her EEOC charge, *see* Doc. 6-1, p. 6, and the text of her EEOC charge also did not indicate that she was discriminated against on the basis of disability. (*See id.* at 7.) The court will accordingly reach the same conclusion as that reached by the *McIntosh* court and dismiss Voss's ADA claim for failure to exhaust administrative remedies.

## B. Timeliness of Voss's Title VII Disparate Treatment and Hostile Work Environment Claims

The court will next address Manitowoc's argument that Voss's disparate treatment and harassment claims are untimely to the extent that they are based on conduct predating October 2, 2018. (Doc. 7, pp. 6–9.) A plaintiff alleging discrimination under Title VII in Pennsylvania must bring an EEOC charge within 300 days after the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *Mikula v. Allegheny Cty. of Pa.*, 583 F.3d 181, 183 (3d Cir. 2009); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). An EEOC charge is

considered filed when it is received by the EEOC. *E.g.*, *Valentin v. Manpower Grp. Sols.*, 792 F. App'x 208, 210 (3d Cir. 2019).

In this case, Voss filed her EEOC charge on July 29, 2019. (*See* Doc. 6-1, p. 6.) Thus, her claims under Title VII must be based on events that occurred on or after October 2, 2018. Voss's termination, however, is the only event that allegedly occurred during that limitations period. (*See* Doc. 1.)

Voss nevertheless argues that the events occurring prior to the limitations period should be considered timely for purposes of her hostile work environment claim under the continuing violation doctrine. (Doc. 15-1, pp. 17–20.) The continuing violation doctrine serves as an equitable exception to the time bar under Title VII, allowing courts to consider "discriminatory acts that are not individually actionable . . . so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Mandel*, 706 F.3d at 165 (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). Therefore, a plaintiff must prove that at least one discriminatory act occurred within the limitations period and that this alleged wrong "is more than the occurrence of isolated or sporadic acts." *Kimes Univ. of Scranton*, 126 F. Supp. 3d 477, 492 (M.D. Pa. 2015). To make this determination, courts may consider subject matter, i.e., "whether the violations constitute the same type of discrimination," *Mandel*, 706 F.3d at 166 n.2, and

frequency, i.e., "whether the acts are recurring or more in the nature of isolated incidents." *Kimes*, 126 F. Supp. 3d at 492.

Discrete acts, such as "termination, failure to promote, denial of transfer, or refusal to hire" cannot be the basis for a plaintiff to invoke the continuing violation doctrine, because each discrete act "constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also, e.g.*, *Zankel v. Temple Univ.*, 245 F. App'x 196, 199 (3d Cir. 2007) (holding that plaintiff's termination was discrete act that could not form the basis for invocation of continuing violation doctrine). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 114.

Here, as noted above, the only timely event Voss alleges under Title VII is her employment termination. As a discrete discriminatory act, however, her termination cannot be the basis to invoke the continuing violation doctrine. *Id.* Accordingly, the continuing violation doctrine does not apply here. Voss's Title VII hostile work environment claim will therefore be dismissed as untimely and her Title VII disparate treatment claim will be dismissed as untimely except to the extent that it is based on her termination.

C. **Voss's Claims Against Manitowoc Under the FMLA**

In the complaint, Voss alleges both interference and retaliation under the FMLA.  (Doc. 1, pp. 14–16.)  To state a claim for interference with benefits under the FMLA, a plaintiff must plead that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014)).  To state a claim for retaliation under the FMLA, a plaintiff must plead that she (1) invoked her right to FMLA-qualifying leave, (2) suffered an adverse employment action, and (3) the adverse action was causally related to her invocation of rights.  *Id.* at 152 n.6 (citing *Ross*, 755 F.3d at 193).

An employee is an eligible employee under the FMLA if she has been employed by her employer for at least twelve months and has worked at least 1,250 hours for the employer in the last twelve months.  29 U.S.C. § 2611(2)(A).  An employer is subject to the FMLA if it "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar years."  *Id.* § 2611(3)(A)(i).

Here, Voss fails to state a claim under the FMLA because she has failed to allege that she worked at least 1,250 hours in the twelve months proceeding her termination or that her employer employed at least 50 employees during the relevant period. *See, e.g.*, *Sinico v. Berry*, No. 1:18-CV-01259, 2020 WL 528765, at *8 (M.D. Pa. Feb. 3, 2020); *Kiniropoulos v. Northampton Cty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 391–92 (E.D. Pa. 2013)).  Accordingly, Voss's FMLA claims are dismissed without prejudice.

### D. The Complaint States a Disparate Treatment Claim Based on Voss's Termination

The court will next address Manitowoc's argument that the complaint fails to state a disparate treatment claim upon which relief may be granted.  Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[3]  42 U.S.C. § 2000e2(a)(1).  Considering that Plaintiff's termination is the only disparate treatment alleged in the complaint that is within the limitations period, the court's discussion will only proceed with respect to Voss's termination.

---

[3] The substantive standards for discrimination and retaliation are generally the same under Title VII and the PHRA.  *See, e.g.*, *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Woodson v. Scott Paper Co.*, 109 F.3d 918, 932 n.20 (3d Cir. 1997)).  The court will accordingly consider Voss's Title VII and PHRA claims together.

18

In order for a plaintiff to successfully plead a disparate treatment claim in violation of Title VII, the plaintiff must allege: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The parties do not dispute the first three elements.  (Doc. 7, p. 9–10; Doc. 15, p. 10.)  Manitowoc's sole argument is that Voss has failed to allege facts that give rise to an inference of intentional discrimination.  A plaintiff may successfully plead facts giving rise to an inference of discrimination by alleging either that similarly situated employees who were not members of the employee's protected class "were treated more favorably under similar circumstances" or that there was a "causal nexus" between the plaintiff's membership in a protected class and the adverse employment action taken against her.  *Greene v. Virgin Islands Water & Power Authority*, 557 F. App'x. 189, 195 (3d Cir. 2014) (citing *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 n.7 (3d Cir. 2003)).

Manitowoc argues that the complaint has failed to do either.  (Doc. 7, p. 10.) Although Voss alleges that she was subjected to burdens that similarly situated male employees did not face, *see* Doc. 1, ¶ 50, Manitowoc asserts that such an

19

allegation is conclusory and fails to meet the pleading burden. (Doc. 7, p. 13.) In support of its argument, Manitowoc points to Voss's failure to allege who was responsible for terminating her employment. (*Id.*)

This court does not find Manitowoc's argument persuasive. Voss makes allegations from which sex discrimination could be reasonably inferred. On several occasions Smith, the Human Resources director at Manitowoc, criticized Voss for not being firm enough in rejecting Cunningham's advances. (Doc. 1, ¶ 37.) Smith also threatened Voss with disciplinary action for future misconduct. (*Id.*) These alleged facts are sufficient to give rise to an inference that Voss was terminated because of her sex. Thus, the motion to dismiss the disparate treatment claim with respect to Voss's termination is denied.

### E. The Complaint States a Retaliation Claim Upon Which Relief May Be Granted

The court will next address whether the complaint states a claim for retaliation upon which relief may be granted. To state a claim for retaliation under Title VII, a plaintiff must allege that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir.1995)).

20

The parties agree the first two elements are met: Voss's complaints about sexual harassment and discrimination constituted protected activity, and her termination constituted an adverse employment action. (Doc. 15, p. 12; Doc. 20, p. 4.) Manitowoc argues Voss's retaliation claim must be dismissed because Voss fails to allege a causal connection between her protected activity and the allegedly retaliatory conduct. (Doc. 7, p. 14.)

A complaint may adequately allege a causal connection between a plaintiff's protected activity and a defendant's allegedly retaliatory conduct by alleging (1) that the defendant gave an "inconsistent explanation for taking an adverse employment action" against the plaintiff, (2) "a pattern of antagonism" against the plaintiff, or (3) an unusually suggestive temporal proximity between the protected activity and the defendant's conduct. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). The alleged circumstances as a whole may also be sufficient to infer retaliation. *Id.*

The court finds that the complaint adequately pleads a pattern of antagonism necessary to support an inference of retaliation. Voss alleges several incidents in which Voss complained about Cunningham's behavior and was met with responses that could be viewed by a reasonable finder of fact as antagonistic. First, Voss alleges that she told Smith about Cunningham's behavior and Smith told her she was not "firm enough" in rejecting Cunningham's advances. (Doc. 1, ¶ 33.)

21

Second, Smith allegedly criticized Voss for not approaching management earlier about the November 14, 2017 incident with Cunningham and stated that the timing of her decision to come forward about the incident was not "fair" to Cunningham. (*Id.* ¶ 34.)  Third, Smith, upon informing Voss of Cunningham's termination, criticized Voss for numerous "failures" and stated again that Voss was not firm enough in rejecting Cunningham's behavior and that he believed Voss was a willing participant.  (*Id.* ¶ 37.)  In that same conversation, Smith informed Voss that any future misconduct may result in discipline not limited to termination.  (*Id.*)

Other allegations also support an inference of retaliation.  Voss alleges that while she was on FMLA/STD leave Ward reported her as absent despite Voss notifying him that she would be working from home and had to attend a funeral and a doctor's appointment.  (*Id.* ¶ 41.)  Ward also allegedly marked Voss as absent during her leave and reported that Voss was not responding to emails, despite Voss having sent an email to him stating that she would be on leave starting that day.  (*Id.* ¶ 42.)  Taken together, these allegations are sufficient to allege a pattern of antagonism.  Accordingly, Voss's retaliation claim survives Manitowoc's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss (Doc. 6) is granted in part and denied in part.   An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 29, 2021